IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

**PEDRO JOHNSON**                                                                                       **PLAINTIFF**
ADC #149892

v.                                        No: 5:17-cv-00328 DPM-PSH

**RONALD BAILEY,** *et al.*                                                            **DEFENDANTS**

## FINDINGS AND RECOMMENDATION

### INSTRUCTIONS

The following proposed Findings and Recommendation have been sent to United States District Judge D.P. Marshall Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

### DISPOSITION

#### I. Introduction

Plaintiff Pedro Johnson, who is currently held at the Arkansas Department of Correction's East Arkansas Regional Unit, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 on December 11, 2017, naming Ronald Bailey, Joe Page, III, Linda Dykes, and Marshall Dale Reed as defendants (Doc. No. 2). Johnson later amended his complaint to

add Corporal Cathy Paulk as a defendant (Doc. No. 18). Johnson alleges defendants failed to protect him from a sexual assault by another inmate on July 19, 2017. Doc. No. 2 & 18.

Defendants Bailey, Page, Dykes, and Reed filed a motion for summary judgment, a brief in support, and a statement of facts claiming that Johnson had not exhausted claims against them before he filed this lawsuit (Doc. Nos. 29-31). Johnson filed a response to the defendants' motion (Doc. No. 32). After she was served, defendant Paulk also filed a motion for summary judgment, a brief in support, and a statement of facts claiming that Johnson had not exhausted claims against her before he filed this lawsuit (Doc. Nos. 40-42). Johnson filed several pleadings in response to Paulk's motion (Doc. Nos. 46-48). The defendants filed a reply (Doc. No. 49), and Johnson filed a response and declaration in support (Doc. Nos. 50-51). The defendants' statement of facts, and the other pleadings and exhibits in the record, establish that the material facts are not in dispute and that defendants are entitled to summary judgment as a matter of law.

## II. Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits or declarations, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56; *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but must demonstrate the existence

of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### III. Analysis

Defendants argue that they are entitled to summary judgment because Johnson failed to exhaust his administrative remedies as to them before he filed this lawsuit. In support of their motions for summary judgment, defendants submitted a declaration of Shelly Byers, the ADC's Grievance Coordinator; a copy of the ADC's inmate grievance policy; a copy of Grievance TU-17-00595; and a copy of Grievance TU-17-00594 (Doc. Nos. 29-1 – 29-4 & 42-1 – 42-4).

The Prison Litigation Reform Act (PLRA) requires an inmate to exhaust prison grievance procedures before filing suit in federal court. *See* 42 U.S.C. §1997e(a); *Jones v. Bock*, 549 U.S. 199, 202 (2007); *Jones v. Norris*, 310 F.3d 610, 612 (8th Cir. 2002). Exhaustion under the PLRA is mandatory. *Jones v. Bock*, 549 U.S. at 211. The PLRA's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes, and whether they allege excessive force or

3

some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The PLRA does not prescribe the manner in which exhaustion occurs. *See Jones v. Bock*, 549 U.S. at 218. It merely requires compliance with prison grievance procedures to properly exhaust. *See id*. Thus, the question as to whether an inmate has properly exhausted administrative remedies will depend on the specifics of that particular prison's grievance policy. *See id*.

### A.  ADC Grievance Policy

Pursuant to the ADC's grievance policy (Administrative Directive 14-16), inmates are provided Unit Level Grievance Forms as part of the Inmate Grievance Procedure. *See* Doc. No. 29-2 at 4. To resolve a problem, an inmate must first seek informal resolution by submitting a Step One Unit Level Grievance Form within 15 days after the occurrence of the incident. *Id.* at 5. Inmates are to "specifically name each individual involved for a proper investigation and response to be completed by the ADC." *Id*. at 4. An inmate must be "specific as to the substance of the issue or complaint to include the date, place, personnel involved or witnesses, and how the policy or incident affected the inmate submitting the form." *Id*. at 5-6. A problem solver investigates the complaint and provides a written response at the bottom of the form. *Id*. If the inmate is not satisfied with the resolution, he may then complete Step Two of the grievance procedure and submit the form as a formal grievance. *Id.* at 8. If the inmate receives no response, or if the inmate is not satisfied with the response, the inmate can appeal to the appropriate Chief Deputy/Deputy/Assistant Director. *Id.* at 10-11. Once that person responds, the grievance process is exhausted. *Id.* at 12. According to the ADC's grievance policy, the entire grievance procedure should be completed within 76 working days absent an extension or

4

unforeseen circumstances. *Id.* at 13. The grievance policy specifically states that inmates must exhaust administrative remedies at all levels of the procedure before filing a federal civil rights lawsuit. *Id.* at 17.

### B. *Johnson's Complaint*

In his amended complaint, Johnson alleges that defendants violated his constitutional rights by failing to protect him from a sexual assault by another inmate on July 19, 2017. *See* Doc. No. 18. Specifically, Johnson claims that an inmate working in the segregated housing area gained access to Johnson's cell because his lock was defective. *Id.* at 2-3. Johnson claims the defendants failed to take the matter seriously. *Id.* at 3. He specifically alleges that defendant Paulk was assigned to the segregated housing area on July 19, 2017, and failed to supervise the inmate that attacked him. *Id.* at 3. Johnson generally alleges that defendants Page and Dykes failed to conduct weekly inspections of the segregated housing area to ensure that maintenance and safety needs were met. *Id.* at 4-6. Johnson further claims that defendant Bailey failed to perform routine safety checks of cell doors in the segregated housing area. *Id.* at 6-7. He also describes an attack by a different inmate that occurred on July 11, 2017. *Id.* at 3. Johnson claims the investigation of that attack was not handled properly, and he was subsequently transferred and put in punitive isolation for 30 days in retaliation for the incident. *Id.* Finally, he claims he was denied due process because certain reports relating to both the July 11 and July 19 incidents were not provided to him. *Id.* at 4.

### C.   *Grievance TU-17-00594*

Johnson submitted grievance TU-17-00594 on July 16, 2017.  Doc. No. 29-4. Johnson's Step One grievance stated:

> This Grievance is being written because I'm trying to see why? I'm still being housed in Restrictive Housing after the Administrative Directive states (PREA) victims cannot be placed in restrictive housing for more than three (3) days.  Captain Bailey received my statement and he also had officer West write @ statement about this incident on 7/15/17.  I called the PREA Hotline on @ inmate and now Deputy Warden saying its to early for her to determinant [sic] who's the victim.

*Id.* at 3.  Johnson proceeded to Step Two on July 21, 2017, claiming that he "shouldn't have to stay back here until Internal Affairs come." *Id.*  Warden Page's response informed Johnson that he was being held in restrictive housing due to the ongoing Internal Affairs investigation and that both parties claimed to be victims.  *Id.* at 2.  The grievance was found without merit, and Johnson appealed.  *Id.*  The grievance appeal response stated that the matter was under investigation by the Internal Affairs Division and that Johnson would be informed of their decision.  *Id.* at 1.  Because TU-17-00594 does not describe any allegations in Johnson's complaint, it does not serve to exhaust any of Johnson's claims in this lawsuit.

### D.   *Grievance TU-17-00595*

Johnson's second grievance concerning sexual assault, TU-17-00595, was lodged on July 20, 2017.  Doc. No. 29-3.  Johnson's Step One grievance stated:

> On July 19th 2017 while been housed in Restrictive housing I was sexually assaulted by the Restrictive housing porter.  I called the (PREA) hotline @ which captain Bailey came and took my statement.  I would like for the camera to be watched to ensure I.A. that staff wasn't on post while this incident took place.  At no time should an inmate be allowed in your cell

6

>unattended. I feel as if ADC officials would have done they part none of this would have happen. This shows negligent [sic] and I fear for my safety because my door don't lock. Chief of Security hasn't made any effort to come see me or anything which shows indifference.

*Id.* at 3. The staff response to the grievance states that "this situation was reported to the PREA Hotline and internal affairs will be investigating these allegations." *Id.* Johnson proceeded to Step Two on July 21, 2017, claiming that he "shouldn't have to stay in restrictive housing until Internal Affairs come." *Id.* Warden Page's response stated that Johnson's grievance had been forwarded to the Unit PREA Compliance Manager who would open an investigation. *Id.* at 2. Johnson appealed, again complaining that he should not be kept in restrictive housing pending the investigation. *Id.* The appeal response found Johnson's appeal to be without merit because he had admitted engaging in consensual sexual misconduct. *Id.* at 1.

Defendants argue that TU-17-00595 does not serve to exhaust Johnson's administrative remedies because Johnson failed to specifically identify any staff that failed to protect Johnson on July 19, 2017. *See* Doc. No. 41. Johnson argues his claims were exhausted because he named his attacker and sufficiently described what happened to him. *See* Doc. No. 32 at 2. He also argues the ADC policy requiring naming personnel is vague. *Id.* at 3. Finally, Johnson indicates that his claims should be considered exhausted as to defendants Page and Reed based on their involvement in the grievance process. *Id.* at 3; Doc. No. 50 at 1-3. Johnson is incorrect that these defendants' review of his grievances constitutes exhaustion as to them. To comply with the ADC's grievance policy, Johnson

7

was required to specifically grieve their actions.[1]  Accordingly, the Court must determine if TU-17-00595 sufficiently describes his claims against a defendant.

The ADC grievance policy requires inmates to name each individual involved for a proper investigation and response to be completed by ADC.  *See* Doc. No. 29-2 at 4-5.  The United States Court of Appeals for the Eighth Circuit has determined that failure to name specific defendants can be a procedural deficiency, and prison officials' acceptance and resolution of a procedurally deficient grievance can serve to establish proper exhaustion.  *See Hammett v. Cofield*, 681 F.3d 945, 947 (8th Cir. 2012) (PLRA's exhaustion requirements are satisfied if grievance is considered on the merits, even if it could have been denied for procedural deficiencies).  *But see Waller v. Kelley*, 956 F. Supp. 2d 1007, 1013 (E.D. Ark. 2013) (explaining that *Hammett* only applies where prison officials have disregarded procedural flaws in a grievance and reached the merits of specific claims against specific individuals).  *See also Daniels v. Hubbard,* No. 5:14CV00360 BSM, 2015 WL 9222627, at *1–2 (E.D. Ark. Dec. 17, 2015) (The failure to name a defendant as required by the ADC grievance policy may constitute a procedural defect that is waived if the defendant's conduct forming the basis of the claim against him or her is adequately described in the grievance and the failure to name the defendant does not prevent the ADC from investigating the grievance on the merits.).

---

[1] The law is clear that *respondeat superior* is not a recognized basis for § 1983 liability.  *See Keeper v. King*, 130 F.3d 1309 (8th Cir. 1997).  To establish liability against a defendant in a supervisory role, an inmate must prove that the defendant was personally involved in the constitutional violation or became aware of the constitutional violation and, with deliberate indifference, failed to take corrective action or tacitly authorized the offending acts.  *See, e.g., Luckert v. Dodge Cty.,* 684 F.3d 808, 817 (8th Cir. 2012); *Choate v. Lockhart*, 7 F.3d 1370, 1376 (8th Cir. 1993).

The gravamen of Johnson's grievance TU-17-00595 is that an unnamed staff member, who could have protected him, was not on post while the sexual assault took place.[2] Johnson's failure to identify the staff member could constitute a procedural defect that would justify rejection of the grievance. However, the ADC did not reject the grievance. In its response to the grievance, the ADC stated that "this situation was reported to the PREA Hotline and internal affairs will be investigating these allegations." Doc. No. 29-3 at 3. The Court finds that the conduct forming the basis of the claim against the staff member was adequately described in the Step One level grievance, and the failure to name the staff member in the grievance did not prevent the ADC from investigating it on the merits. Simply put, Johnson's failure to name the staff member in issue in his grievance, assuming he made the same complaint on appeal to the Warden and the Director, cannot be the basis of a claim that he did not exhaust his grievance.

Unfortunately for Johnson, this is not what he did. At Step Two of the grievance process, he complained that he should not be required to stay in restrictive housing "until Internal Affairs come." *Id.* Despite this, the Warden considered Johnson's initial grievance alleging sexual assault, stating that the "grievance has been forwarded to the Unit PREA Compliance Manager who will cause an investigation of the PREA complaint pursuant to Department PREA Policy AD 15-29." *Id.* at 2. However, the Warden did not address Johnson's complaints about staff's failure to prevent the assault. *Id.* At that point,

---

[2] Johnson alleges in his complaint that Paulk was the staff member on duty when he was attacked, and should have been supervising the other inmate who was working in the segregated housing area.

9

Johnson could have appealed the ADC's failure to reach his failure-to-protect claim on the merits, but he did not. Instead, his appeal complained that he had been kept in restrictive housing while the investigation was pending. Accordingly, to the extent Johnson sufficiently described Paulk as on-duty "staff" to exhaust his failure-to-protect claim, he failed to exhaust his administrative remedies as to that claim because he did not appeal it and it was not decided on the merits.

Johnson also complained in TU-17-00595 that he may not have been attacked if "ADC officials" had done their part. Johnson's reference to "ADC officials" doing their part is not detailed enough to put the ADC on notice of the individuals it should investigate. He does not specifically identify what actions these unnamed officials took or how they could have prevented the attack on him. Johnson has not sufficiently described the unnamed officials or their conduct such that his claims against defendants may be considered exhausted.

Johnson specifically names Bailey in TU-17-00595, but Johnson does not complain about Bailey's conduct – he merely states that Bailey came to take his statement. Johnson did not grieve that Bailey failed to perform routine safety checks of cell doors in the segregated housing area as he alleged in his complaint. Accordingly, Johnson did not exhaust his claims as to defendant Bailey.

Finally, Johnson complained in TU-17-00595 that the chief of security had not been to see him after the incident. Because this complaint is not related to any allegation in Johnson's complaint, it is not necessary to determine whether it sufficiently describes a claim against the chief of security.

## IV. Conclusion

Because Johnson did not exhaust available administrative remedies before initiating this lawsuit, defendants should be awarded summary judgment, and Johnson's claim(s) against them should be dismissed without prejudice.

DATED this 29th day of October, 2018.

_____
UNITED STATES MAGISTRATE JUDGE